THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL FUENTES, Defendant and Appellant.

No. 10265. Argued January 18, 1944.—Decided February 4, 1944.

*F. García Quiñones* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney General,* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

The appellant was convicted of the crime of rape and sentenced to six years imprisonment in the penitentiary. He bases his appeal on ten assignments of error which we will consider in the same order in which they appear in the brief.

1. In the first one he alleges that the lower court erred in dismissing the demurrer based on the allegation that in the information he was charged with the commission of two different crimes, that of "assault to commit rape" and that of "rape."

The alleged error has not been committed. The information, in its pertinent part, reads thus:

". . . illegally, voluntarily, maliciously, and criminally assaulted the girl under fourteen years of age named . . . with the intention of raping her and using force and violence realized with her an act of sexual intercourse, without the consent and against the will of the aforementioned girl . . . who then and there was not the wife of the defendant."

The assault to commit rape is necessarily included within the crime of rape. It is not possible to impute to a person the commission of the crime of rape when the act has been realized by means of force and violence without imputing at the same time that an attack was directed against the injured person with the intention of raping her. Similarly when in an information for murder it is stated that the defendant assaulted his victim with the intention aforethought of depriving him of his life and that he shot him with a revolver causing his death, the commission of two crimes is not being imputed to the accused, but only that of murder. And this is so because the attempt to commit any crime merges with the crime attempted to be committed as soon as the latter is perpetrated. There is no duplicity in the information in this case. *People* v. *Vega*, 20 P.R.R. 283, 286; *People* v. *Tyler*, 25 Cal. 553; *De Berry* v. *State*, 99 Tenn. 208; *People* v. *Pia*, 14 C.A. 131, 111 Pac. 105.

■ 2–3. These two assignments embrace but one question, that is, if the lower court erred in admitting as part of the *res gestae* the testimony of the mother of the prosecutrix. In order to decide it, it is necessary that we summarize the testimony of the girl and of her mother.

On the date she was raped, the girl was thirteen years of age and lived with her parents and minor brothers in a room of a house in the ward "La Perla" in San Juan. In an adjoining room, separated by a partition, lived the defendant, whom the girl knew *by sight*. The girl testified that while she was taking a bath; her mother and kid brother being at the time in the back yard, the defendant entered into her room. She tried to scream but defendant covered her mouth, carried her by force to his room, and threw her upon his bed, and threatened her so that she would not scream, by telling her he had a dagger. After describing in detail the act perpetrated on her person by the defendant, the girl continued testifying that the defendant threatened her by telling her

that it would be worse for her if she told her parents about it; that the day on which the crime was committed was the first time that the defendant ever talked to her; that defendant lived in his room with a mistress he kept, but that she —the mistress—left due to an argument with him; that after the crime she saw the defendant again from a distance and that he motioned her to keep silent; that she did not tell anything to her mother until six days after, because she was afraid of the defendant, as he had threatened her; that her mother was the first person she ever told of what had happened to her.

The mother of the prosecutrix testified that on the day the crime was committed she saw the defendant on the window of his room while she was in the back yard, where she had gone while her daughter took a bath; that when she returned to the house she found her daughter sitting in a corner reading and looking over some pictures; that on that and the following days she noticed her daughter was sad, but did not see her crying; that on the 6th of July she started to wash some of the girl's clothing and upon finding it stained with blood she asked her what had happened to her and the girl then told her. The witness related what her daughter had told her in the same terms as those used by the girl at the trial, and added that her daughter, after telling her everything, requested her not to say anything because defendant had threatened her with a dagger.

Dr. Antonio Martínez Alvarez testified as to the condition in which he had found the sexual organs of the girl in the examination he had practised on her on July 8; that the girl had been deflowered and that the defloration had taken place within a period of about ten days, being at the time of the examination in process of healing. The age of the girl was established by her certificate of birth and by the testimony of her mother.

Irrespective of the statement made by the girl to her mother five days after the commission of the crime, we are of the opinion that the testimony of her mother and that of the physician are sufficient to corroborate the testimony of the prosecutrix as to the criminal assault perpetrated upon her.

The rule that allows the admission of the complaint of the prosecutrix in corroboration of her testimony or as a part of the *res gestae* is not an inflexible one. Its application with more or less rigidity depends on the special circumstances of each case. When, as in the case at bar, the prosecutrix is a girl of only thirteen years of age, legally incapable of consenting to the carnal act realized upon her person, and her silence during the following five days is the direct consequence of the fear awakened in her mind by the threats of the perpetrator of the outrage, the statement made by her to her mother when the latter, upon discovering the stains of blood, knew that something abnormal had occurred to the girl, is legally admissible. 44 Am. Jur., Rape, § 84, p. 955, note 16. That the girl kept silent due to fear of the threats made by the defendant at the time of the rape and afterwards is shown by the request of the girl to her mother, after telling her what had happened, not to tell anybody about it as defendant had threatened her with a knife.

■■ 4–6. The fourth, fifth, and sixth assignments relate to the incident we are going to explain and decide.

After the presentation of evidence by both parties the defense asked leave to withdraw the jury. The jury having been withdrawn, the defense moved for the peremptory acquittal of the defendant on the ground that no evidence had been presented to prove that the outraged girl was not the wife of the defendant. The court sustained the motion "in the understanding that the jury must be instructed that the evidence is insufficient according to law." Thereupon the prosecution, alleging that the defense had reopened the case

when it made the motion after announcing to the court that it had finished with its evidence and was ready to address the jury, asked the court permission to introduce evidence to prove that the prosecutrix was not the wife of the defendant. The defense objected, the court granted the request, and the defense noted an exception.

The prosecutrix was recalled and in answer to the questions of the prosecutor she stated that she knows the defendant and that he is not her husband. The defense then moved for a *mistrial,* and upon its motion being overruled, it noted an exception.

We are of the opinion that the lower court did not abuse its discretion upon permitting the prosecutrix to testify that the defendant was not her husband. If any error was committed, it was that of deciding that the original evidence presented by the prosecution was insufficient as to that part of the information.

The nonexistence of the marital relation between the prosecutrix and the defendant, being as it is a negative proposition, can be established by indirect or circumstantial evidence. The best evidence that a woman is the wife of a man is the marriage certificate issued by competent authority. To prove that she is not, the testimony of the woman is sufficient if she is believed by the jury. *People* v. *Arenas,* 39 P.R.R. 14. In her first testimony the prosecutrix stated that she knew the defendant "by sight"; that the day of the crime was the first time that the defendant ever talked to her and that before that day he had never bothered her; that she lived with her parents and kid brothers and continued living with them after the crime; and that the defendant lived in his room with his wife, who due to a quarrel had left him in those days. That testimony has, in our judgment, greater probative value than her later simple statement that the defendant was not her husband. We could add to all this that, the prosecutrix being a thirteen-year-old child,

legally unable to marry, it must be presumed that she is not married; and, besides, that even though it was proved that she was married, said marriage would be void. Sections 68 to 70 of the Civil Code.

The additional testimony of the prosecutrix was really cumulative evidence, as the fact that the girl was not the wife of the defendant had been sufficiently established already. The error, if any, could not have prejudiced the defendant.

■ 7–10. The four remaining assignments are related to the instructions given to the jury.

The appellant complains that the court, when instructing the jury about the testimony of the girl, made an argumentative analysis of said testimony. He also alleges that the court induced the jury to believe that the testimony of the prosecutrix was sufficient to convict the defendant.

We have examined the instructions. We fail to find in them remarks or comments on the evidence presented that could be considered prejudicial to the rights of the defendant, or that would sustain the allegation that the judge showed passion or bias against the defendant. The summary made by the court of all the evidence is supported by what appears from the transcript of the evidence. And as to the second part of this assignment, we find that the instruction given by the court to the effect that "in proceedings for this crime the defendant can not be found guilty on the sole statement or testimony of the offended woman, unless her testimony is corroborated by other evidence," is sufficient to demonstrate that the alleged error was not committed.

■ In the instructions on the res gestae rule we find nothing that shows a departure from the standards established by the jurisprudence on this matter. The court did not err in instructing the jury that it is not necessary in all cases that the statements of the prosecutrix must be made immediately after the offense; and that when the

prosecutrix has delayed the telling of what has happened to her for fear of the threats of the offender, the lapse of time does not make the testimony inadmissible. *People* v. *Arenas,* 39 P.R.R. 14; *People* v. *Blanco,* 40 P.R.R. 122, and *People* v. *Vázquez,* 40 P.R.R. 245.

The evidence of the prosecutrix being sufficient to sustain the verdict of the jury and no error prejudicial to the rights of the appellant having been committed, the judgment appealed from must be affirmed.

Mr. Justice Snyder did not participate herein.